FILED
2008 JUL 24 AM 11:24
'08 MJ 2247
U.S. DISTRICT COURT SOUTHERN DISTRICT OF CALIFORNIA
BY DEPUTY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** Plaintiff, | Magistrate Case No. |
| v. | COMPLAINT FOR VIOLATION OF: |
| **1.) Jose Miguel ESCOTO-Vallejo,**<br>**2.) Brenda Elizabeth ARGUELLO,**<br>**3.) Jorge Antonio TERRIQUEZ-Rojas** | Title 8 U.S.C., Sec. 1324 (a)(1)(A)(ii) Transportation of Illegal Aliens<br><br>Title 18, U.S.C., Sec.2 Aiding and Abetting |
| Defendant(s) | |

The undersigned complainant, being duly sworn, states:

On or about **July 23, 2008,** within the Southern District of California, defendant **Jose Miguel ESCOTO-Vallejo, Brenda Elizabeth ARGUELLO, and Jorge Antonio TERRIQUEZ-Rojas** with the intent to violate the immigration laws of the United States, knowing and in reckless disregard of the fact that aliens, namely, **Juan Antonio ESPINOSA-Nava, Jose Alberto PALACIOS-Pineda,** and **Gerardo MENDOZA-Galvan** had come to, entered and remained in the United States in violation of law, did transport and move, said aliens within the United States in furtherance of such violation of law; in violation of Title 8, United States Code, Section 1324(a)(1)(A)(ii) and Title 18, United States Code, Section 2.

And the complainant further states that this complaint is based on the attached statement of facts, which is incorporated herein by reference.

SIGNATURE OF COMPLAINANT
James Trombley
Senior Patrol Agent

SWORN TO BEFORE ME AND SUBSCRIBED IN MY PRESENCE, THIS **24th** DAY OF **JULY, 2008**

Leo S. Papas
UNITED STATES MAGISTRATE JUDGE

**CONTINUATION OF COMPLAINT:**
**1.) Jose Miguel ESCOTO-Vallejo,**
**2.) Brenda Elizabeth ARGUELLO,**
**3.) Jorge Antonio TERRIQUEZ-Rojas**

## PROBABLE CAUSE STATEMENT

Furthermore, the complainant states that **Juan Antonio ESPINOSA-Nava, Jose Alberto PALACIOS-Pineda, and Gerardo MENDOZA-Galvan** are citizens of a country other than the United States; that said aliens have admitted that they are deportable; that their testimony is material, that it is impracticable to secure their attendance at the trial by subpoena; and they are material witnesses in relation to this criminal charge and should be held or admitted to bail pursuant to Title 18, United States Code, Section 3144.

On July 23, 2008, Border Patrol Agent F. Rivera, dressed in civilian attire and operating an unmarked DHS vehicle, was performing anti-smuggling duties west of the Interstate 8 westbound Immigration Checkpoint located near Pine Valley, California. At approximately 1:20 a.m., Agent Rivera observed a white GMC Safari minivan traveling eastbound Interstate 8 (I-8), just east of the Highway 79 exit. The GMC Safari was traveling at approximately 50 miles per hour of I-8. The posted speed limit on I-8 is 70 miles per hour. Driving well under the posted speed limit is a common counter-intelligence tactic used by alien smugglers. Driving below the speed limit allows the smugglers to identify any vehicles attempted to follow them at lower speeds.

Agent Rivera started mobile surveillance on the white GMC Safari, and requested vehicle records checks from Border Patrol Dispatch. Dispatch soon informed Agent Rivera that the GMC Safari was not reported stolen and was registered out of Van Nuys, California. Dispatch further informed Agent Rivera that the GMC Safari had a release of liability on file out of Arleta, California. Alien smugglers commonly use vehicles registered outside the local area to pick up illegal aliens. The use of vehicles with incomplete registrations is also a common tactic used by alien smugglers, in an effort to hide the true identity of the owner from law enforcement officials.

As Agent Rivera followed the GMC Safari on I-8, traffic was very light and there was only one other vehicle between Agent Rivera's vehicle and the GMC Safari. Border Patrol Agent A. Hurtado, also operating an unmarked DHS vehicle, took over surveillance of the GMC Safari as it passed the Buckman Springs Exit on I-8 and continued eastbound. Agent Hurtado noticed that the vehicle in-between himself and the GMC Safari, a dark gray Ford Focus, was matching the GMC Safari's movements, also driving at approximately 50-55 miles per hour, following it closely behind, and not passing it for more than 25 miles of highway. Alien smugglers commonly have a second vehicle traveling in tandem with the alien pick up vehicle. The occupants of the second vehicle commonly scout for law enforcement vehicles in the area,..

Agent Hurtado maintained constant visual surveillance on both the GMC Safari and the Ford Focus until they exited I-8 in Jacumba, California. Agent Hurtado then observed both vehicles, still traveling in close tandem, immediately re-enter I-8 traveling westbound. Alien smugglers commonly reverse directions on I-8, shortly before or after picking up their human cargo in an attempt to detect and evade law enforcement surveillance. Agent Rivera resumed surveillance on the GMC Safari and Ford Focus as they traveled back westbound on I-8. Agent Rivera continued surveillance on the Ford Focus and requested other units take over surveillance of the GMC Safari, as the two vehicles were now separating.

Border Patrol Agent H. Cuevas, now conducting surveillance on the GMC Safari, observed it stop on the shoulder of I-8 just past the Boulevard Exit. Shortly after, Agent Rivera observed the Ford Focus pull over to the shoulder immediately in front of the GMC Safari. Agent Rivera recognized this location, at the Pine Valley 19 Miles / San Diego 68 Miles freeway sign, as a very commonly used illegal alien pick up location.

**CONTINUATION OF COMPLAINT:**
**1.) Jose Miguel ESCOTO-Vallejo,**
**2.) Brenda Elizabeth ARGUELLO,**
**3.) Jorge Antonio TERRIQUEZ-Rojas**

This location is approximately 25 miles east of the Tecate, California, Port of Entry, and four miles north of the United States/Mexico International Boundary. Agent Hurtado, who was traveling approximately a half a mile behind Agent Rivera on I-8, observed several people come out of the bushes near the freeway sign and get into the GMC Safari. Agent Hurtado immediately recognized that an illegal alien smuggling event was unfolding before him, and notified the other Agents of his observations.

Acting Field Operations Supervisor M. Treadway and Supervisory Border Patrol Agent M. Hansen were positioned in order to assist the surveillance units. Agents Treadway and Hansen were each operating marked Border Patrol vehicles, equipped with fully functioning emergency lights and audible police sirens. Agents Treadway and Hansen were each wearing full Border Patrol uniforms.

Upon confirmation that the GMC Safari had picked up illegal aliens on the side of the road, Agents Treadway and Hansen began traveling westbound on I-8 from the Boulevard Exit. Agent Hansen observed the GMC Safari re-enter the I-8 travel lanes from the shoulder, then turn its headlights on. Agent Hansen further observed that the rear of the GMC was riding unusually low, as if heavily laden. Immediately thereafter, Agent Hansen observed the Ford Focus traveling at freeway speed on the shoulder with its headlights off. The Ford Focus, still with its headlights off, pulled onto the interstate and cut off Agent Hansen. Agent Hansen then observed the headlights on the Ford Focus come on, well after it was traveling on the freeway. Agent Hansen passed the Ford Focus in an effort to catch up to the GMC Safari.

Agent Hansen pulled his marked sedan alongside the driver side of the GMC Safari and activated the right alley light on his vehicle in order to observe the driver. Agent Hansen was able to get a good look at the driver of the GMC Safari. The driver of the GMC Safari, later identified as the defendant **Jose Miguel ESCOTO-Vallejo** swerved into Agent Hansen's lane forcing him to take evasive action to avoid being rammed. Immediately after, the driver of the GMC Safari accelerated to a speed well over the speed limit and pulled away from the marked sedan and other surveillance units. Agent Hansen observed the GMC Safari swerve back and forth between the two lanes of travel, at times traveling for long stretches straddling both lanes. Based upon the driver's dangerous actions, Agent Hansen requested that Campo agents respond to assist and prepare themselves to deploy a controlled tire deflation device before he attempted a vehicle stop.

Several miles ahead, the Border Patrol Checkpoint was operational, and the Agents knew from experience that the GMC Safari would most likely exit I-8 onto Kitchen Creek Road, so that its occupants could bail out. Agent Rivera attempted passing the GMC Safari in order to go to the Kitchen Creek Road Exit and set up a controlled tire deflation device. Agent Rivera, driving his unmarked vehicle, waited for the GMC Safari to occupy a single lane of travel, then attempted passing it in the fast lane. As the front of Agent Rivera's vehicle started passing the rear of the GMC Safari, **ESCOTO** violently swerved left towards Agent Rivera. Agent Rivera had no choice but to maneuver to the left, coming dangerously close to a large drop-off on the side of the freeway. The GMC resumed its original position, as Agent Rivera attempted to steer off the shoulder back into the lane. **ESCOTO** again swerved at Agent Rivera, coming dangerously close to ramming his vehicle a second time. Agent Rivera slowed down and backed off after the driver's second attempt at running Agent Rivera off the road.

Shortly after, Agent Hansen observed the GMC slow down and exit I-8 onto Kitchen Creek Road. As the vehicle slowed down almost to a stop at the bottom of the exit ramp Agent Hansen activated his vehicle's

DEx

emergency lights and audible siren in an effort to conduct a vehicle stop in order to ascertain the immigration status of its occupants. The GMC failed to yield to the enforcement stop as it accelerated northbound on Kitchen Creek Road. Kitchen Creek Road is a winding mountain road, with scattered sharp curves near drop-offs and cliffs. **ESCOTO** continued driving northbound in an attempt to flee from the pursuing units. Marked units backed off and allowed the unmarked vehicles to follow the GMC Safari. As Kitchen Creek Road ended, just before a closed iron gate near Mile Marker 5, the GMC came to a stop. Agent Hansen

**CONTINUATION OF COMPLAINT:**
**1.) Jose Miguel ESCOTO-Vallejo,**
**2.) Brenda Elizabeth ARGUELLO,**
**3.) Jorge Antonio TERRIQUEZ-Rojas**

positioned his vehicle alongside the driver's side and observed **ESCOTO** exit the driver's seat and run away southbound between Agent Hansen's vehicle and the GMC Safari. Agent Hansen ran after defendant **ESCOTO**, and was able to apprehend him within 20 yards of the vehicles. Agent Hansen was further able to positively identify defendant **ESCOTO** as the driver on I-8, when he had illuminated the GMC with his vehicle's alley light. Agent Hansen identified himself as a Border Patrol Agent and inquired as to his immigration status. Defendant **ESCOTO** freely admitted to being a citizen and national of Mexico, having no immigration documents that would allow him to legally enter or remain in the United States. At approximately 2:30 a.m., Agent Hansen placed defendant **ESCOTO** under arrest.

Meanwhile, Border Patrol Agent B. Blanchard and Agent Cuevas had positioned their vehicles along the passenger side and rear of the GMC respectively. Agents Blanchard and Cuevas did not observe anyone else exiting the GMC. Agents Blanchard and Cuevas approached the GMC on foot, identified themselves as Border Patrol Agents and conducted individual immigration inspections on the 15 occupants. Each occupant individually and freely admitted to being citizens and nationals of Mexico, having no immigration documents that would allow them to legally enter or remain in the United States. Agents Cuevas and Blanchard placed the 15 illegal aliens under arrest.

As Agents were pursuing the GMC Safari, Agent Treadway positioned his marked vehicle behind the Ford Focus, and activated his vehicle's emergency lights and police siren in an effort to conduct a vehicle stop and perform an immigration check of its occupants. The Ford Focus yielded to the enforcement stop on I-8, at the Crestwood Road Exit. Agent Treadway identified himself as a Border Patrol Agent and conducted an immigration inspection on the female driver and male passenger. The driver, identified as defendant **Brenda Elizabeth ARGUELLO**, stated that she was a United States Citizen. The passenger, identified as defendant

**Jorge Antonio TERRIQUEZ-Rojas**, stated that he was a Lawful Permanent Resident of the United States. Agent Treadway placed defendant **ARGUELLO** and defendant **TERRIQUEZ** under arrest for suspicion of conspiracy to smuggle illegal aliens, in violation of 8 USC 1324.

Defendants **ARGUELLO, TERRIQUEZ,** and **ESCOTO**, the 15 illegal aliens, the Ford Focus and the GMC Safari were transported to the Boulevard Border Patrol Station for processing.

**CONTINUATION OF COMPLAINT:**
**1.) Jose Miguel ESCOTO-Vallejo,**
**2.) Brenda Elizabeth ARGUELLO,**
**3.) Jorge Antonio TERRIQUEZ-Rojas**

**DEFENDANT STATEMENT (Jose Miguel ESCOTO-Vallejo):**

**ESCOTO** was advised of his Miranda Rights and indicated that he understood his rights and did not ask for an attorney before providing the Agents with a statement. **ESCOTO** stated that he was a citizen and national of Mexico without valid immigration documents to enter or remain within the United States legally.

**ESCOTO** stated he illegally crossed the United States/Mexico International Boundary on Tuesday of last week at approximately 11:00 AM. **ESCOTO** stated that he was staying at an apartment in San Diego when an unknown man came looking for someone that could drive for him and that all he needed to do was to pick up some people. **ESCOTO** stated that it was easy for him just to take the van and drive to a pick up location. **ESCOTO** was offered $100.00 USD for each person that he picked up. After **ESCOTO** agreed, the smuggler drew a map of the pick up location, which **ESCOTO** stated that he memorized. **ESCOTO** admitted to having prior knowledge that the people he was picking up would be illegal aliens.

According to the plan, **ESCOTO** stated would be driving the illegal aliens to a location that would be given to him by the group's foot guide. After driving to that location, **ESCOTO** would then join the group of illegal aliens and walk through the mountains to another pre-determined location. The unknown smuggler who hired him told **ESCOTO** that a woman would be following him in a car with another person. The smuggler did not state if the other person was a male or a female. **ESCOTO** stated that according to the plan, the woman and her passenger would take the van after he left with the group of illegal aliens. **ESCOTO** saw another car stop in front of the van when he was picking up the illegal aliens.

**ESCOTO** stated that as per his memorized instructions, he turned around using the Jacumba exit on Interstate 8 and then proceeded to a sign that read San Diego sixty-something miles to pick up the illegal aliens. **ESCOTO** stated that after picking up the illegal aliens on the side of the road, he saw a patrol car. **ESCOTO** accelerated because he was scared and because he did not want to be sent back to Mexico after having crossed into the United States illegally. **ESCOTO** stated that he was conscious of the fact that he accelerated to over 100 miles per hour. **ESCOTO** stated that he knows he should have stopped.

**MATERIAL WITNESSES STATEMENTS:**

Material Witnesses **Juan Antonio ESPINOSA-Nava, Jose Alberto PALACIOS-Pineda,** and **Gerardo MENDOZA-Galvan** stated that they are citizens and nationals of Mexico illegally present in the United States. They stated that they did not have any immigration documents allowing them to be in the United States legally. They stated that arrangements had been made in Mexico to be smuggled into the United States. All the material witnesses stated that they were to pay between $1,500.00 to $2,000.00 U.S. dollars to be smuggled into the United States.